The next case on our docket is 21-30046 Henderson v. Atmos Energy Corp. I'm not sure I can pronounce your name correctly, but thank you.  My name is Connie True, and I'm representing Mr. Henderson, the appellant. This appeal comes before this honorable court today because pursuant to two improper judgments made by the district court in these proceedings, number one, the district court improperly granted Atmos Energy, the appellee to this proceeding, its motion for summary judgment, and they found that Miller Pipeline, who, you know, our argument is that they're a subcontractor, but they're arguing that Miller's an independent contractor, so, you know, it's on Miller, it's not Atmos, and that Atmos has no liability because, you know, they hired an independent contractor. Second, the district court improperly denied Mr. Henderson, the appellant, his motion for leave to amend the petition to add Miller Pipeline, you know, as an employee or a subcontractor, despite Mr. Henderson showing good cause, Your Honor, for the amendment of the petition and very minimal prejudice that would be suffered by Atmos and Miller. The standard of review, Your Honor, in this case would be for the motion for summary judgment, we would use the de novo standard in this case to these proceedings, and again, and the ruling, the district court's ruling on the procedural questions would be the abuse of discretion standard, Your Honor. Our first main argument is, again, the district court erred in determining that Miller Pipeline was not an employee of Atmos Energy. As a preliminary matter, the district court erred because, you know, they didn't resolve all reasonable inferences in favor of the non-moving party, in this case, Mr. Henderson, as you will see from the following analysis. The courts find that an independent contractor, so in order to be an independent contract, which they're trying to say Miller is, number one, there's five factors. Number one, a contract exists between the parties. Number two, the contracted party can conduct business independently, and again, number three, the contract is for specific work to be done without control, I emphasize, without control, Your Honor. Number four, there's a specific price for the work, and finally, number five, the contract is for a duration of time without an at-will termination by either side. So here, we argue, to Your Honor, that there were many, many factors that weigh heavily in favor of Miller Pipeline being classified as an employee of Atmos and not an independent contractor, and the district court was very improper in its determining that Miller Pipeline was independent. The first reason, you know, Atmos argues that there's all this boilerplate language that says, oh, you know, they were an independent contractor. However, in Louisiana law, and this is an Eastern District, Louisiana, 2018 case, boilerplate language about control and supervision is inefficient to establish a relationship as an independent contractor. Rather, the court looks to the content of the contract to determine the nature, so they don't care about all the boilerplate, they look at the content, Your Honor, and in this case, the content, we'll go on to the second and third factors moving on. The contract— Well, so wait, you just ran past the first factor— Oh, sorry. —which is why there's, where there's a contract, there is a contract here. There is a contract. What is it specifically about the contract that you think weighs in favor of your client? Okay. Your argument. The reason, Your Honor, the contract has just so much control provisions where Atmos, they charge Miller to complete its project. For example, they mandated, you know, Atmos mandates what type of tools to use for this project. They charge Miller for the tools as evidenced by there's a rate sheet, you know, and again, we didn't even get to that because this is all motion for summary judgment. We don't even get to argue that by a trier of fact regarding the rate sheet of all the materials that Miller's supposed to use. Miller had to also inventory all of the materials that Atmos provided. Atmos also had the right to inspect all materials to see if the tools were working properly. And again, one of the factors, I remind you again because I emphasize it very much, this contract, in order for it to be independent, it must be without control by Atmos. And here, Atmos dictates all the work to be performed in accordance with Atmos's procedure manual, their operations and maintenance manual, their communication corporation bulletin board. This is, you know, Atmos controlling. The difference is safety. Some of these are safety measures. And I agree. It is safety on it, but it's still a measure of control. Well, but I thought there was Louisiana law that said that doesn't count toward control when the general contractor is trying to ensure safety on the job site. Well, besides safety, again, it's not just safety. It's continuing one of my examples. Atmos, not just the safety part. Let's move away from that. Atmos dictated how these gas pipelines were to be installed. Miller had to use the torch cut method. Isn't that the safety issue? No, I mean, to me, I think it's not just a safety issue. It's telling you how to do it. It's not just saying, hey, you guys go install these pipes however the heck you want. We'll just check the results at the end. It's telling them exactly, this is how you do it. This is how you do the torch cut method. It must be according to our manual. Atmos had to go and chart the work of Miller and test the PSI pressure of the pipelines and sign off on the work. Pipeline safety requires certain pressures within operating limits. I don't understand. I understand Your Honor is bringing up the safety. But again, there's many other factors of control. Atmos furthermore controlled the hours of work. They set the hourly price for the workers of Miller. So, you know, it's so easy now to say, oh, you know, it's all on Miller. We have no liability. But they were acting as an employer the entire time, Your Honor. There's cases in Louisiana, for example, in Kibido versus Progressive. That's a third circuit case where the court did find that there was an employment contract because the work to be done was provided in specific detail, which is the case here. I just went over all the factors of control. There were specific rules to be followed and the tools for work were provided by the employer. In this case, like I mentioned, Atmos provided the tools. Miller, they just had to do the inventory of everything. But Atmos was the one who provided the tools. So similar to Kibido versus Progressive, that's literally the same facts. You think Kibido is a strong case for you? Yes, it is a strong case, Your Honor. It provided... Are there other cases? So we obviously will look at that. Yes. And I mean, if you don't mind, Your Honor, just to give more employee cases while we're on it, sorry. The case of also Adams versus Greenhill, this is another first circuit. The hourly basis was the work and tools to be done. Again, that showed it was an employer-employee relationship where they set the tools to be used. Another case in Simon, and that is a... I think it was a third circuit. The relevant factors were the work supplies, again, were provided by the employing company, same like here. Atmos provided the tools. And then the hired person was required to train and comply with policies of the employing company. And so... What are the tools that are provided here, specifically? Specifically, the tools that were provided, I mean, I guess I'm not really in that business of Atmos. I'm guessing gas pipeline installation tools, Your Honor. I'm sorry, I'm not a... There's... You're saying there's tools that are being provided by... And the biggest thing, too, and because I know we just jumped into tools and things, if they... The Atmos here, they had a termination clause. That's the biggie in this case. They have a termination clause in a lot of cases. Again, in Simon, there's been a case in Simon which was, again, a third circuit case where the court found the most antagonistic, okay, where you find that there is no independent contract relationship. The most antagonistic provision is the termination of the relationship without cause and with no corresponding liability for breach. So, if Atmos... I'm sorry, the case says basically... I was suggesting employer-employee relations. Yes. So, in this case, Your Honor, Atmos had a termination clause in the contract. So, I know you were hung up about the safety part, Your Honor, but this here, the termination clause stated, Atmos Energy Corporation may terminate this agreement in whole or in part at any time at its sole discretion by providing written notice of termination to the contractor, which is Miller, and in the event that this agreement is terminated, the only liability would to pay for the unpaid balance for the actual work performed. So, in essence, Your Honor... Well, they still had to... So, there was some penalty for terminating, right? There was some penalty, but they could still terminate Miller at will at any time, and they weren't liable for breach of contract for this termination. So, literally, the same holding from Simon, where he says, if you can terminate without any type of liability or with, you know, at-will termination, that's an employer-employee relationship. So, when you take into account these five factors, Your Honor, and I do understand the safety issue, but there was much more than just the safety and the manuals and operations. It was the tool provided. It was the ability to terminate Miller any time they wanted to. They set the price range for all the workers at an hourly rate. I think it was... I don't remember. It might have been $50 or something, but regardless, you take into the five factors. It was very clear that there was a relationship where Atmis employed Miller, and so now to say, oh, you know, we had nothing. We were not an employer. We never, you know, had anything to do with them. Despite all these control and mechanisms of terminating them whenever they wanted to at will, there's no way that the district court should have found that an employer-employee relationship did not exist. Furthermore, Your Honor, even if, let's just say that somehow, you know, Your Honor and District Judge said, you know what? Yeah, we think that there is an independent contract relationship. There's also the operational control. Operational control. There's operational control. And again, this is not, you know, you may hear from counsel in a bit about, oh, well, you know, Atmis was never there. It was always Miller who was there with the gas pipelines. It's not physical presence, Your Honor. It's the right to control, which was very set so clearly in this contract all throughout. We told the pricing, the tools provided, you know, again, the manuals, the Atmis energy operations. Operational control, Your Honor. This case, it's the Landry case, and that is the Fifth Circuit 1989 case. Fifth Circuit had posited that specific instructions on how the work was to be done sufficed to amount to operational control, and that in that case, more analysis revealed that if the defendant prevented its contractor from instituting, you know, other measures, then that would weigh toward operational control. What actually caused the accident here? What was the cause of the accident? So, it's street where Atmis, now they're blaming it on Miller, but, you know, we say Atmis and Miller, they're putting in these gas pipelines. They're supposed to, you know, obviously maintain safety netting and keep the area at least clean, not slippery. Our client lives in that area. He literally, he goes to McDonald's every morning. He loves McDonald's. He goes to McDonald's, he comes back, is leaving his car, you know, has a huge slip accident. He slips, yeah. He slips on what? On mud or something like that? Mud. Mud from the installation of these pipelines is just sprawled all over the sidewalk. He just steps out, you know, he's a heavy set man, and he slips down, Your Honor, and then at this point fractured his teeth, lost his teeth. You know, this is not just some little fake injury case. This is real. He fractured his teeth, huge bruising all over his thighs, shoulder, cervical, neck. I mean, we're talking about the whole deal. He, in order to call the police, he was crawling. I mean, I'm talking about crawling to the front door and finally got to his phone to call his friend down the street to come and help pick him up to call the police. So, it is not just some, you know, fake little slip and fall. This is real. He lost his front, like his teeth were pulled out after this accident. And so, when you take into account that, you know, ATMOS should have done a better job of, you know, safety netting, control the mud somehow when you do that. Do we need to be concerned with how ATMOS was exercising operation control over the work site? In other words, what caused your client's injury slipping on the work site? So, can you speak to that? Well, I mean, they, you know, they controlled, basically, again, if you remember, I said they controlled everything down to the construction, not just safety, construction and procedure manual. So, obviously, if they're employing who they call independent contractors, and these people are not putting up safety netting, and, you know, and besides, my client was not the only one. We actually had affidavits up and down the neighborhood of other, there was a mother walking her little child, she almost slipped. Other neighbors and people down the street saying, oh, my God, they've been doing all this gas and pipeline. We almost, you know, killed ourselves slipping over it. Unfortunately, my client did slip, but these other people, they were near falls. But, you know, to gloss over it and just now blame all of it on this independent contractor and saying, oh, we had no control. Yes, you did. You had manuals and, you know, notices and updates. Can you be specific about what parts of the manuals indicate control over the operations, these operations? So, there were two, they had a master service agreement, Your Honor, and also a task request agreement. So, I mean, you said manuals. You said manuals. What in the manuals? Okay. I mean, I know the name of it. It's called the Atmos Energy Construction and Procedure Manual, the Atmos Energy Operations and Maintenance Manual, and the notice, updates, and postings that were available through their IS net world communication manager. We don't need generalities. We need specifics. Specifics, okay. I was, they. That show control or operational control. I'm sorry. That show what was controlled. We need for you to tell us what precisely was controlled by Atmos. Atmos controlled, I mean, really, I would say almost everything, Your Honor. If you look at the operation manual, they're going to control how the work was done, the do the PSI pressure of the pipeline. Did the manual control how they were to make the work site safe so that people wouldn't slip? That included that, yes. It included that. If I look in the manual, I should find directives about keeping the work site clean and safe and so that people don't slip, so that there was control exercise with respect to that. Control exercise with respect to that, and the biggest thing, again, determination at any time, you know, without cause. Similar to that case that I cited to you that said if you can terminate them anytime, you're an employer. Okay. Landry's a good case. We're going to move on to the second argument, Your Honor, which is that the district court erred in denying appellant's motion for leave to amend the petition in order to add NOAA pipeline as an employee or subcontractor. The district court improperly denied Mr. Henderson's motion for leave as a defendant. The standard under Rule 16 to grant a motion for leave is good cause. Here, there was very minimal time, you know, before, between admins. They had filed a third-party complaint against Miller. They did. They filed a third-party complaint and then later on voluntarily did a motion to dismiss. Counsel for Henderson, which is us, we had sent numerous, you know, discovery requests to admins. This was back in, um, in January before discovery cut off. We sent it to their counsel at the time with Ms. Lauren Dykes. Did he file motions to compel? I'm getting to that, Your Honor. So we sent it to her. She, you know, doesn't respond, gives us the weight, oh, I'm being evasive. I don't know. I mean, I don't know what the reason was. She didn't respond. Next thing you know, suddenly, Mr. Daniel Rayburn now is substituted as counsel. So we were like, hey, Lauren, where's the discovery? What's going on? Mr. Rayburn. You saved your time. May I continue at all? Or is that, like, completely, no? You saved some time for rebuttal. Okay. I'll save it for rebuttal. Good morning, Your Honors. I'm Gregory Laborde with Daniel Rayburn on behalf of the, uh, at the Lees. I believe the issues are all fully addressed in our brief. We believe the trial court was correct in its granting of the summary judgment. The trial court was correct in denying the motion to amend the complaint. Which, when you look at the amended complaint, doesn't really add a whole awful lot. To the case. Because it seeks to add Miller as the indemnitore of Atmos, but doesn't allege any independent fault or actions on the part of Miller. So it's, it's rather strange. I'd be happy to respond to any questions that the court might have. Well, I mean, counsel opposite brought up a number of issues. I think the general, you heard the general gist of it was that Atmos is controlling every aspect of this. How do you respond to the idea that, well, Atmos was controlling this down to telling them how to cut the pipe? First of all, the specification in this contract was to use cold cutting as opposed to hot cutting. There are multiple methods to accomplish cold cutting. Atmos did not direct a particular cold cutting procedure. On the, because it all ties into operational control, Miller needed to comply with various safety requirements of Atmos and procedures in general terms. Miller was responsible for safety netting and safety barricades throughout the job site. But Atmos didn't say install three-foot netting with one-inch holes held up by green and yellow markers. These, it was up to Miller to make the decisions as to how it was going to actually do the work. And that's where the issue of operational control comes in. If Atmos had sent a supervisor to this job site every day, who every time a Miller employee lifted a spade of dirt and said, no, put it here rather than there, well, that's operational control. Appellant says the contract retains to Atmos the right to inspect and then morphs the right to inspect into the right to control. Those are two different things. Any owner on any construction job has a right to go on the site and say, oh, you contract, your carpenter put the door in upside down, you need to fix it. Now, that doesn't mean that the owner has now become the employer of the carpenter. So, appellate talks in generalities, but in order to defeat the summary judgment, needed to come up with specifics. She mentioned two things. She mentioned the termination clause and supplying tools. Can you address those? I'm sorry, I can't. Can you address the termination clause? And counsel said that Atmos supplied tools. On this particular job, I don't believe that there were any unusual tools that were directed other than specifying the grade of pipe, which Atmos can get and needs to meet certain specifications. On the termination, the specific requirement in the case is that the contract not subject to termination at will without liability for breach. But this contract did have a breach provision. It provided that if it was terminated, Miller would be paid X if it went over or Y if it did. So, the second part of that requirement is missing from this case. But it could be terminated without cause. There's no evidence to that. Well, the contract was never terminated. I'm just saying it could be terminated anytime. Was that with cause or without cause?  I wouldn't want to misquote the contract. But to me, that's an irrelevant issue because it's not like the cases require each of the five factors enumerated to all absolutely be present. So, even if one or two factors . . . It was just a factual question. I'm not saying it's dispositive. I just wanted to know if you can terminate without cause. I don't want to take your argument back. We'll look. Anything else the Court would like me to address? Is there anything . . . She mentioned the manuals, operational manuals. I'm probably getting the terminology wrong. Did the manuals speak to the . . . I guess the cause of this thing was inadequate safety netting. Is that what it was or what was the cause of this thing? Well, from my perspective, the cause of the accident was that the appellant failed to observe an open and obvious hazard if it existed. Oh, I know that's your argument. I just meant, well, how did this guy slip, right? What was the open and obvious hazard? He slipped on mud. And how did it get there? Exactly. What she says. This is in front of his house. He left his house. He got in his car. He came back. He parked his car. He traveled the same path as before. That's not my question. No, he slipped on something. He slipped on mud. How did the mud get there? The mud got there from the pile apparently spreading for one reason or another. Safety netting was behind it. Well, safety netting is not going to stop mud. I mean, what are you . . . If it rains, you know, mud will flow. We will agree on that. Did Atmos tell Miller how to make the worksite safe? Did it exercise control over these sorts of matters? No, it was Miller's responsibility to secure the site safely. And there's no requirement that any dirt piles be placed in boxes or be secured. I mean, I can imagine a manual saying, look, this is how you're going to secure the dirt so that when the rain comes, the mud will not flow, right? The manuals are not that specific. If they were, the plaintiff should or appellant should have that section of the manual that says an improper netting was used, okay? That's . . . Appellant merely offers the contracts in the manuals to say, oh, well, there's got to be an issue in here somewhere. Well, where's the evidence of the issue? Did Mr. Henderson argue in the district court that the contract and the work order created ambiguity? Between Atmos and Miller, there's no ambiguity. There's a master service agreement. It's a non-exclusive arrangement. Atmos is free to offer work to Miller. I'm just asking, was that argument made in the motion for summary in the district court? Did Henderson say there's a fact question because the master service agreement plus the work order, whatever you call it, created an ambiguity? The appellant makes the argument without showing what the ambiguity is. Did they make that argument in the district court? I believe Judge Afric addressed that issue in his opinion, which is very detailed. He laid out his thinking completely, and all of his conclusions are supported by the record. Were you counsel in the trial court? No. Mr. Rayburn retired from the firm three weeks ago, and so here I am. I have no other questions. Thank you. Mr. Rayburn. Your Honor, I want to just reiterate exactly what you asked him. Did the master service agreement conflict with the task agreement? They're arguing, oh, the master agreement, we're independent contract, but again, we've gone over the hourly rates, the torch cutting method. It wasn't the safety of the contract. Itself had the right to supervise and to control whether it was safety or the methods. That is still the right to control. So like your Honor asked, it did in fact create ambiguity between this, these two agreements, and we should have had the chance to litigate that in front of the trial effect. But instead it was shot down in this motion for summary judgment when there was clear ambiguity like your Honor just said on the bench. Getting back to, you know, your question earlier when he said we never got these manuals and I wanted to be able to answer your Honor's question about, you know, safety and the methods. We never got to that point. Discovery was still going. In fact, even as late as October 2020, Judge Africk had to get on the phone and tell Mr. Rayburn, you need to set the deposition for Atkinson's deposition. We kept on trying to get the discovery. They switched counsel. You know, we asked Ms. Laura Dyson, does it respond with any discovery from Atmos? Does it provide us the manuals? Everything we asked for. Switched counsel to Rayburn. He doesn't give us, you know, anything we asked for discovery. You're asking, well, Connie, why didn't we do the motion to compel? This is during all of, let me see, the, we had asked for it. This is during peak COVID, and I'm sorry I have to use the COVID thing, but it really was true. It's not an excuse. I'm not whining about it. During March, when Mr. Rayburn enters as counsel, March 2020, literally peak of COVID, everyone, you know, goes MIA for like until May, he gets back. And then at this point, we're like, hey, we need, you know, you need to respond to the set of interrogatories, the second set, not just the first, the second set that we've sent to you. And no response. Waits till at this point, he says, oh, well, you know, we need to schedule this deposition, you know, tells us that, okay, let's schedule a deposition. That's then September comes. Okay. We're getting ready to schedule a deposition. Oh, by the way, you know, Rayburn, ATMAS is going to shift all liability over to Miller. Right away, as soon as we hear this, we're like, wait, wait, what? Miller? Miller's the truth of the picture. We thought we were just dealing with y'all. And now you're saying Miller's liable? So as soon as we hear that, September, we go and we file this motion for leave to amend the petition right away, Your Honor. We don't wait. And then, you know, a month later, just AFRIC gets on the phone with us during the telephone conference and says, ATMAS, why didn't you do this deposition yet? Provide your rep. You need to get it done within, I think it was like two weeks. And finally, we get our deposition. Still no safety manuals and things yet, just a deposition. And then here we are now, Your Honor. I don't think that ATMAS should be rewarded for, you know, delay and delay and delay of discovery. And, you know, and if you were to award them and just allow, agree with the district judge who grants this motion for summary judgment, it would be such a huge, huge injustice to Mr. Henderson. I don't think that's what the law should have provided for. I think that they should have responded when we asked for discovery on a timely basis. And, you know, they're a matter of delay. And you heard from counsel. All right, counsel, you're substantially over your time and we have your argument. Well, I apologize. Just lastly, I'm so sorry. He said, he said the manuals were not necessary. You heard that on the bench from him. The manuals were not necessary. His client are providing these manuals to Miller and suddenly now counsel saying manuals are not necessary. Does that even make sense to anyone? Manuals are necessary and counsel. Your time is up.